The next case for argument is 16-1177, Baltrics v. Opinion Lab. This is a case for argument 16-1177,  Just waiting for your friend to get settled here. Whenever you're ready, Mr. Steinberg. Good morning. May it please the court. I'm Bob Steinberg from Latham & Watkins, and I represent Qualtrics. Legal error occurred below. The main reference that we focused on at the PTAB was the customer set reference, and the PTAB did not find that a pop-up exclamation mark questionnaire was a survey in a pop-up window. And the limitation we're worrying about here is, quote, while the user remained at a particular webpage, right? That's correct. So as far as the prior art that was put forth by you in the PTAB, customer set, meta nets, and the other thing, you agree, don't you, that that limitation is not expressly disclosed within the four corners of those pieces of prior art? Yeah, here's the issue, Your Honor. This phrase, pop-up, exclamation mark, that is the pop-up window that the patent, the 805 patent, describes as having a survey in it. Now, the pop-up, exclamation mark, invitation, which precedes the pop-up questionnaire, pops up on the screen, and we know that from the reference itself it says it. But the board below didn't want to go to the next step, which is to show— No, no, but can you answer my question? Yes. I still am waiting to hear an answer to my question. I'm happy to have you explain the answer, but is that limitation expressly disclosed in any of the pieces of the prior art that were offered out? With regard to pop-up questionnaire, Your Honor, that to us is the express disclosure of a pop-up window that satisfies the limitation because you have a— Without more? I mean, you've got without more being without a declaration, without a reference to a person skilled in the art reading the Wu reference, without more, is there an express disclosure in those pieces of prior art? With those specific words of the claim, Your Honor, no. Those words about remaining on a page, receiving feedback while you're still looking at the web page below, those words are not in customer set. But what we do know is a pop-up exclamation mark questionnaire did exactly that, and it's explained that way in the four corners of the customer set reference, and we know that because pop-up exclamation mark invitation pops up on your screen in front of you, asks if you want to do a questionnaire, and then you click on it and you get the questionnaire. But how do we know that? I mean, even taking the declaration of your expert. Your Honor, exactly. We know that because in the reference itself at 394 of the appendix, it explains pop-up at the top. It generically talks about pop-up. That's with an exclamation mark. It says it lets you survey website visitors instantly, and here's the most important part of this document at 394. By the time you have read, and this is the website that I have, which was our evidence, this is the reference. By the time you have read this far, a pop-up with an exclamation mark survey invitation should have appeared on your screen. So the pop-up appears on your screen over this page. Give it a try. For more information about pop-up, lower case, please email us at this address. We know a pop-up window, that phrase, it's used in the 805 patent to describe, excuse me, figure six in the 805 patent, the patent that's being challenged. It is a pop-up window that would appear over another webpage, and the reason we have a pop-up window in the 805 is to create convenience, so that I can fill in, this is what the patent says, conveniently fill in the questionnaire in this pop-up window, which itself is a webpage, move it around so that I can see what it is I'm answering questions about. And that is exactly what this reference is about. So the founder of this company testified that the phrase pop-up with an exclamation mark in front of invitation, it means the same thing in front of questionnaire. It says, inobtrusively, conveniently, and instantly using pop-up technology on the very next page. In other words, pop-up with an exclamation mark technology is being described generally. And that phrase is being used in front of either an invitation or a question. And we know it pops up, there's no dispute, even between the parties or at the board. At A6 of the opinion below, it makes it very clear that the pop-up invitation is popping up in front of you, and then you can pop up on the questionnaire if you click on it. Now here's where the court went astray, the board went astray. It didn't focus on this phrase. It didn't focus on the pop-up exclamation phrase in front of questionnaire and consider what a person of ordinary skill in the art would have thought about that phrase in the context of background, benchmark, knowledge that they had or would have had to be presumed to have. And what they would have thought about in the context of this reference, what they would have thought or inferred in fact, or what this would have suggested as to being obvious, that determination in light of the Wu reference, the Chisholm testimony, common sense as applied to this reference itself, simply was not applied. That's where the legal error occurred. Didn't that matter have come in in the first instance since the burden was on you all to establish in the first instance what references or what your reliance is to establish it? I mean, it seems to me there was a gap left in your first presentation that you tried to fill up on your reply with the declaration and the references to Wu and the person's skill in art. Isn't that a problem as a matter of process? Your Honor, we don't think so. And there's a case on point here. It's the Genzyme case from this court. And it makes it very clear in that opinion that art information could come in later during the proceeding itself, the trial proceeding post-institution, to develop the record. Especially when we're talking about the critical element under KSR having to determine what the level of ordinary skill in the art would be applied to the references that we relied on. The petition had three references that were instituted. We didn't change that. We didn't say this limitation is met because of this new art. Instead, we said there is a person of ordinary skill in the art who would recognize that the state of the art, their background, when they looked at that reference, customer said, they would see within its four corners pop-up exclamation mark means a pop-up. But the board rejected it. I mean, there were a battle of experts here. And the board kind of seems – I mean, they used the word credibility, which is an almost unassailable proposition on review. And they credited not Mr. Chisholm, but the other side's expert whose name escapes me. Yeah, let me address that, Your Honor. I really do want to address that. Here's what happened. During the trial hearing itself, it was very clear that the board was thinking about customer set with four corners. Let me get to your question. And it asked several times, on the record, I can only look at this reference from its four corners. You're giving me these other things, woo, chisholm, common sense arguments. But I can only look at it from the four corners. It said, Mr. Steinberg, again, I keep coming back. Sorry, Mr. Steinberg, I keep going back to this. The test for obviousness, as you know, is based on what a person of ordinary skill in the art is viewing within the four corners of the reference. And that's at page 27 of the trial hearing. It was a rigid focus. I mention that because, in the opinion, the court didn't focus on pop-up exclamation mark and what it meant to a person of ordinary skill in the art. Instead, it wanted to find evidence in customer set that, in fact, the questionnaire worked just like the invitation. That is, show me, this is what they said, that the invitation, their words, the board's words, turns into the questionnaire. Turns into. That the invitation and the questionnaire are one and the same. First of all, I don't think my colleagues at Opinion Lab would even admit that that is required by the claims of the 805 patent. Any of them. That the questionnaire and the invitation have to be the same and turn into it. The trial decision, the decision from the board is very clear, Your Honor. Where it turns is on this issue, a requirement not in the claims. It doesn't say that's a construction. There's no embodiment in the 805 patent that works this way. For its satisfaction, because it didn't want to interpret the reference based on a person of ordinary skill in the art because it thought it had a blinkered approach. Contrary to Randall and Ariosa, cases from this court, it looked for something else, a technical requirement. And that technical requirement is simply something that is not in customer set. It doesn't show the survey going over the invitation or being in the same place or turning into it on the same web page. That's a web page. The pop-up window is a web page. There is no requirement for that in the claims. That was just something that the board latched onto because it wasn't satisfied that it could look at something beyond customer set and satisfy itself. That the common sense would explain that the invitation works like the questionnaire because that's what it says. And Mr. Chisholm, the founder of the company that created this very program, the customer set program, he said it worked this way. He said it worked this way. Now that by itself is not dispositive. But we brought in Wu, a reference that came up in the file history of the Patent Act issue during the prosecution. This patent is referred to as the 697 patent. The Wu reference was never disclosed or discussed, weighed, rejected, or what have you in the decision. Yet it came up and was discussed in great detail during the hearing at 4628 to 30. It was not a piece of prior art that you offered up in the first instance. I'm sorry. It was not a piece of prior art that was offered up in the first instance. But it came up during the trial proceeding because they raised it. They raised it in the context of their response first. They opened the door on it. What do you mean they raised it? They didn't raise Wu. Oh, yes, they did. They did, Your Honor. They raised it in their response. They raised it in response to this context. They were trying to say that the claims of the 805 patent were allowed on this claim limitation, that we have an issue here. And we came back in our reply and said, no, no, no. That's not why it was allowed. It was allowed on another limitation, scrolling, while the invitation or button stays up on the screen. That's what it was allowed on. And we talked about Wu, the 967 patent. We called it by the numbers. And what we pointed out was common knowledge. It shows that the very thing they said was supposed to be allowed over and that limitation wasn't added in the notice of allowance. It was Wu. Wu shows this limitation. Dr. Seamus admitted in the record, and we cite that in our briefs, that it shows the limitation. He set it straight up. And that was ignored. So not only was Chisholm ignored, our expert, Dr. Seamus' testimony about what Wu does pops up a window so that you can look at it simultaneously with the web page below. That was ignored. None of that was considered in the decision. And that's error. Okay. Your interior rebuttal. Yes. Thank you very much, Your Honor. I reserve the rest of my time. Mr. Kennerly. Thank you, Chief Judge Prost, and may it please the Court. Qualtrics' alleged legal error is really an attempt to evade the demanding substantial evidence standard that applies to the Board's factual determinations. We heard it again today in Qualtrics' argument about whether customer SAT actually discloses this limitation at issue. But why shouldn't they have addressed Wu? Wasn't that a strong argument, leaving aside for the moment? I mean, the Board didn't say you're improperly raising Wu now and you should have raised it in the first instance, so this is not proper. The Board just didn't say anything, at least specifically, about the discussion of the Wu reference. Well, Your Honor, the Board certainly never stated that it was not considering Wu. In fact, it stated the opposite, that it had considered the totality of the evidence presented by Qualtrics in making its factual findings, that's at A11 to 12. There's no suggestion in the decision that the Board ignored any of Qualtrics' evidence, including Wu, or that its evidentiary view was circumscribed in any way. And in fact, with respect to Wu, the Board's decision expressly discussed Mr. Chisholm's reply declaration, which is where Wu came in. And while the Board didn't discuss Wu in particular in its decision, at the hearing, it made clear that it was aware of Wu, understood how Qualtrics was applying Wu, and understood the proper use to be made of Wu, if any. That's in particular at A46, 28 to 29 of the hearing transcript. And this record forecloses Qualtrics' argument that the Board believed it could not consider Wu for the purpose Qualtrics requested, establishing this commonality of a claim element that was supposedly absent from the prior art at institution. It's certainly reasonably discernible how the Board got to its result, its factual findings, and those are entitled to substantial deference, as you know. I would like to address this gap that the Court mentioned in Qualtrics' arguments below, which were never filled, actually. Wu was not mentioned in the petition or the supporting Chisholm declaration. The Court noted that. Wu also was not mentioned in Qualtrics' reply. The reply cited paragraph 23 of Chisholm's reply declaration, which related to Wu, but cited it only with respect to a different claim limitation about scrolling. That's at A2614. If you look at Chisholm's reply declaration, that's at paragraph 23. That's the only portion of the reply declaration that mentions Wu, and it does not set forth any opinion about how Wu would inform a person of skill in the art in interpreting the customer sat reference or any other reference. It's in a separate section 4 that does not relate to customer sat. He testifies there that Wu expressly discloses the limitation, does not mention customer sat at all. That's at A3785-86. So Qualtrics' argument before this Court in its reply brief at 18, and also to the Board at the hearing, that's at A4628-29, really distorts the record. Qualtrics argued or certainly implied there that Mr. Chisholm testified that Wu would have led a person's skill in the art to interpret customer sat in a certain way, but he never says that. There's no testimony to that effect, no evidence to that effect from Mr. Chisholm in his reply. And so it's understandable on that record why the Board, in its final written decision, did not expressly discuss Wu, talked about Chisholm's reply declaration, said it made its factual findings based on the totality of the evidence presented, which are, you know, we have this substantial evidence standard, which certainly was met. But it's entirely understandable why the Board wouldn't have focused on this one piece of evidence that Qualtrics now raises as being very important when, if you look at this record, there's no evidence, no testimony ever. But Wu contains. Is there a dispute that Wu contains? The limitation that seems to be missing in terms of the petition is expressly described in Wu, right? Well, we don't agree with that. Now, Qualtrics certainly argued that, but the Board never found that. And really what's shown in Wu is there's a one-sentence description of it. It's about a test environment and someone entering comments. It's unclear when and how that was presented, what's being done there. So there's a very, very thin record, not developed at all by Qualtrics, about what Wu discloses. And there's certainly no admission from Opinion Lab that Wu discloses what Qualtrics says it did. And the Board disagreed, and that's what we have. Unless the Board has any other questions, I'll just close by really noting that the Court, the Board did exactly what it's supposed to do here. Considered all the evidence, including testimony from both experts, both declaration testimony, deposition testimony. Determined, made findings about what testimony it believed more credible. And then expressly discussed all the evidence presented in its factual findings. And, you know, fully supported by substantial evidence here. And really the alleged legal errors that are presented on appeal are just an attempt to get around that. The vast majority of the argument today from Qualtrics was, again, what the references disclose. More factual argument that they've already lost on that. And, you know, the Board's findings should hold up there. I would like to also address the notion that the Board was looking at an incorrect limitation or a limitation that was not in the claims. That's plainly incorrect. In its final written decision, the Board explicitly and repeatedly stated the limitation as recited in the 805 patent claims. It did so in describing the patent and the challenged claims at A3. In its analysis of the alleged obviousness at A5, 7, 8, 9, and 10. And in its ultimate conclusion that Qualtrics had failed to meet its burden to prove obviousness, that's at A12. So there was plainly no legal error on the Board in considering some non-existent or incorrect limitation. That argument's a red herring. Both the Board's decision and Opinion Lab's briefing focused on the correct limitation. And really, the argument from Qualtrics really is sort of a misinterpretation or, I would say, a distortion of the record. We see in the arguments on appeal that there's a selective quotation going on. And I noted that in Qualtrics' reply brief at 12, it quotes Opinion Lab's brief as stating, quote, HTML 4.0 specification ellipsis does not suggest placing a survey invitation and survey form ellipsis or in ellipsis the same window. But that second ellipsis omits the words separate frames of, which was what was in Opinion Lab's brief, which changes the meaning. So you can compare Opinion Lab's brief at 33, where it says, quote, HTML specification ellipsis does not suggest placing a survey invitation and survey form in separate frames of the same window. So this argument that there was a requirement by Opinion Lab that somehow these things both appear in the same window, and that's what the Board was focusing on, just evaporates really when you look at what the Board actually did. And indeed, Opinion Lab has argued numerous times that that wouldn't make any sense anyway. So if the customer sat at the exact page that Qualtrics pointed to, A394 makes clear there's a pop-up invitation, and then you go to or you're taken to a questionnaire or a survey, that's at a different page. It's shown in the reference, and that's always what Opinion Lab has argued. This notion that somehow we're arguing that they need to be in the same window, that certainly doesn't make any sense. If the window is there with the survey, you would need the invitation in the first place. So this whole notion what customer sat talks about is you get an invitation, then you go off to the survey at a different page, and that's always been the argument, and the Board correctly discerned what the limitation was, repeated it over and over, and made its detailed factual findings based on that. Unless there are any questions, that's all I have. Thank you. First and foremost, let me go back to the trial, to the decision from the PTAB, and it is very clear that the PTAB said the following, based on the arguments that were made. In other words, according to Opinion Lab, customer sat's survey button is only an invitation. There is no teaching or suggestion that this pop-up invitation contains the survey itself. It repeats this again and again in the decision. It's not looking for just a pop-up window like the patent requires so that you can put feedback in it. It's looking for something more that the survey and the invitation have to come together. That is at A6 of the decision, and at A8, just another notable one, customer sat's survey button would turn the survey invitation into a survey question. Their words, the board's words. That's not required by the claim, and they won't admit that. So that's not a limitation of the claim. That was a requirement they looked for because they were looking for something in the reference that survey and invitation came together, so it was admitted that the invitation pops up. Pop-up exclamation mark. The expert both agree. That phrase with the exclamation mark, it meant popping up. Dr. Seamus and Mr. Chisholm, and you can see that admission at A4265. Dr. Seamus, their expert, he said that that's woo. It does the pop-up. That is the gap that the court felt was missing. Under Ariosa, it is clear that a person of ordinary skill in the art needed to take that into account while looking up pop-up the phrase to see what it meant. Legal error, your honors, that that phrase wasn't interpreted in no way in the art. And the woo reference with regard to Mr. Chisholm and what he said, he brought the argument up because they raised it in their response. We replied to it to explain how the case was allowed, and in that context he pointed out that woo in particular, do I have that? I do have that. That woo at A222 shows the pop-up window at 3786, and that confirms what he said about his own system, that pop-up exclamation mark means just that, popping up. And what he did was he pointed to woo as saying this is common knowledge, and that's how we referred to it in our reply brief, and we referred to that declaration. None of that was discussed in the decision. Thank you. Thank you, your honor.